# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| SEDRIC TYSON,<br><br>    Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant. | CASE NO. 5:24-CV-71 |

**ORDER**

Before the Court is Defendant State Farm Fire and Casualty Company's motion for partial summary judgment. Dkt. No. 38. In this motion, Defendant seeks, first, to limit any potential recovery by Plaintiff Sedric Tyson under Count I of his amended complaint to the actual cash value of the alleged damage, and second, dismissal of Count II of the same complaint. See generally, Dkt. No. 38-1. Plaintiff has filed no response to the motion, and the time for doing so has passed. Accordingly, the motion is ripe for review. For the reasons stated below, the motion is **GRANTED**.

**Background**[1]

This case arises out of damage allegedly sustained to the

---

[1] Because Plaintiff failed to respond to Defendant's motion, all facts within Defendant's statement of material facts, dkt. no. 38-2, which are supported by evidence are assumed to be admitted, see

roof of Plaintiff's home on August 30, 2023. Dkt. No. 38-4 at 1; Dkt. No. 38-10 at 6. The property sits in Douglas, Georgia, dkt. no. 38-4 at 1, and Defendant insured the property under a homeowner's insurance policy ("the policy") when the alleged wind damage occurred, dkt. no. 38-3 at 2. Plaintiff first reported the damage to Defendant through his attorney on November 6, 2023. Dkt. No. 38-10 at 6-7. An initial inspection by Defendant's retained consultant revealed no accidental direct physical loss on Plaintiff's roof. Dkt. No. 38-10 at 4. But a public adjuster hired by Plaintiff found the replacement cost value of the damage to be $72,396.01 with an actual cash value of $66,916.52. Dkt. No. 38-5 at 12. Under the policy, the "actual cash value" is the "value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." Dkt. No. 38-3 at 17. The replacement cost value is "the cost to repair or replace [covered property] with similar construction and for the same use." Id. at 34.

---

Rule 56.1, Motions for Summary Judgment (S.D. Ga. June 2016), available at https://www.gasd.uscourts.gov/sites/gasd/files/Local_Rules_of_Civil_Procedure_Printable_rev_June_2016.pdf ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."); dkt. no. 40 (notifying Plaintiff that failure to respond to Defendant's statement of material facts may result in the Court deeming the supported material facts admitted).

After Plaintiff's inspection, Defendant arranged for a second inspection of the property, which again revealed no accidental direct physical loss to the roof, but did reveal some water stains in the building's interior. Dkt. No. 38-10 at 1–2. Defendant estimated that the replacement cost value of the damage was $501.03. Dkt. No. 38-7 at 2.

In June 2024, Defendant hired Eric Spell of SEA Ltd. ("SEA"), a professional engineer, to inspect the roof and investigate the source of water damage. Dkt. No. 38-9 at 1, 6. SEA concluded that, though one shingle may have been damaged by wind, the water damage was due to deficiencies in the installation of roof covering and the installation and maintenance of an exhaust fan duct, not wind damage. Id. at 6–7. After SEA's assessment, Defendant released a revised estimate of the replacement cost value of the damage totaling $1,045. Dkt. No. 38-8 at 3. The pertinent part of Plaintiff's homeowner's insurance policy with Defendant provides:

> **Coverage A – Dwelling**
> 1. **A1 – Replacement Cost Loss Settlement – Similar Construction**
>    a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following
>       (1) until actual repair or replacement is completed *we* will pay only the *actual cash value* of the damages [sic] part of the property, up to the applicable limit of liability shown in the *Declarations*,

        (2)   not to exceed the cost to repair or replace the damaged part of the property;
        (2)   when the repair or replacement is actually completed, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less;
        (3)   to receive any additional payments on a replacement cost basis; ***you*** must complete the actual repair or replacement of the damages [sic] part of the property within two years after the date of loss, and notify ***us*** within 30 days after the work has been completed;

. . . .

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**
    a. ***We*** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the ***Declarations***, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:
        (1) ***We*** will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. ***We*** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;
        (2) until actual repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1);
        (3) when the repair or replacement is actually completed as described in a.(1)

4

>   > above, ***we*** will pay the covered additional amount ***you*** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less;
> (4) to receive any additional payments on a replacement cost basis, ***you*** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify ***us*** within 30 days after the work has been completed;

Dkt. No. 38-3 at 34-35 (emphasis in original).

## Procedural Background

Plaintiff initially filed his complaint in the Superior Court of Coffee County, Georgia, on August 9, 2024. Dkt. No. 1-1. Defendant removed the action to this Court on September 20, 2024. Dkt. No. 1 at 5. Plaintiff subsequently filed an amended complaint, dkt. no. 20, to which Defendant submitted an answer, dkt. no. 24. In the amended complaint, Plaintiff brings a claim for breach of contract in Count I, and a claim for bad faith under O.C.G.A. § 33-4-6 in Count II. Dkt. No. 20 ¶¶ 31-41, 21-30. Defendant now moves for partial summary judgment. Dkt. No. 38. Responsive pleadings and evidence opposing that motion were due on September 15, 2025. Dkt. No. 40. As of the date of this Order, Plaintiff has filed no response to Defendant's motion for partial summary judgment.

## Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant

5

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

## Discussion

To date, Plaintiff has submitted no brief or evidence in response to Defendant's motion for partial summary judgment. Plaintiff's failure to respond to Defendant's motion results in two assumptions: Plaintiff (1) does not oppose the motion, and (2) admits Defendant's statement of material facts which are supported

6

by evidence. Southern District of Georgia Local Rule 7.5 ("L.R. 7.5") requires a party opposing a motion for summary judgment to respond within twenty-one days after service of the motion. S.D. Ga. L.R. 7.5. If the opposing party fails to respond in that timeframe, the lack of response indicates no opposition to the motion. Id. Motions for summary judgment shall be accompanied by a concise statement of material facts to which there is no genuine dispute as supported by the record. S.D. Ga. L.R. 56.1. If the opposing party does not controvert the associated statement of material facts provided by the moving party, that statement of facts is deemed admitted. Id.

Here, Defendant filed its motion for partial summary judgment on August 25, 2025. Dkt. No. 38. Briefs and evidence in opposition to the motion were due on September 15, 2025. Dkt. No. 40. Plaintiff has submitted no brief or other evidence to the Court in response to Defendant's motion, and Defendant's statement of material facts remains uncontroverted. Therefore, the Court assumes that Plaintiff does not oppose the motion and admits Defendant's statement of material facts.

However, the Court cannot enter summary judgment in favor of a party "on the mere fact that the motion is unopposed." United States v. One Piece of Real Prop. Located at 5800 Sw. 74th Ave., Mia., Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). Instead, the Court must consider the merits of the motion. Id. The Court need

7

not review all evidentiary materials on file but must ensure that the reviewed motion is supported by evidence. Id. This comports with the moving party's burden at summary judgment "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted). Therefore, though Plaintiff did not respond to the motion for summary judgment, the Court will review the record evidence to ensure that Defendant's motion for summary judgment is supported and determine whether Defendant has shown an absence of genuine issue of material fact. See Medford v. Kroger Co., No. 4:24-CV-163, 2025 WL 1994675, at *2-3 (S.D. Ga. July 17, 2025) (explaining the standard for evaluating an unopposed motion for summary judgment). Here, because consequential damages are properly excluded, and Plaintiff's claim for bad faith fails as a matter of law, partial summary judgment for Defendant is proper.

### I. Plaintiff's recovery is limited to the actual cost value of the allegedly damaged property.

Under the Coverage A portion of the policy, Plaintiff is limited to recovering, if anything, the actual cash value of any covered damage to his property. Defendant argues that Plaintiff's claim for replacement cost value of repairs fails as a matter of

law, and therefore, any recovery by Plaintiff should be limited to the actual cash value of any covered damages. Dkt. No. 38-1 at 7–8. Defendant points to the language of "Coverage A – Dwelling" requiring the insured to complete the actual repair of the damaged part of the property within two years of the date of loss to recover any replacement cost value beyond the actual cash value of the damaged property. Dkt. No. 38-3 at 34. Defendant next directs the Court's attention to the absence of any submitted evidence by Plaintiff that he completed the repairs by August 30, 2025, two years from the date of the alleged loss. See Dkt. No. 20 (alleging in the amended complaint that the loss occurred on August 30, 2023); Dkt. No. 38-1 (noting that, as of, August 25, 2025, plaintiff had submitted no evidence showing he had completed the repairs to his home).

Under Georgia law,[2] the Court looks to the text of the policy itself to determine its terms. Ga. Farm Bureau Mut. Ins. Co. v.

---

[2] This case is an action based on an alleged breach of an insurance contract, and an action for damages premised on the Defendant insurance company's alleged bad faith refusal to pay the claim under a Georgia statute. See Dkt. No. 20. With respect to the breach of contract action, district courts generally presume that a claim arises under common law. See Sowa v. Mercedes-Benz Grp. AG, 764 F. Supp. 3d 1233, 1257 (N.D. Ga. 2024). Because parties have not drawn the Court's attention to the laws of any foreign jurisdiction to govern the claim, the Court will assume that Georgia law applies. See, e.g., Elder v. Reliance Worldwide Corp., 563 F. Supp. 3d 1221, 1231 (N.D. Ga. 2021) (applying Georgia law where "neither party reference[d] any statutes on point" for the breach of warranty claims).

9

Smith, 784 S.E.2d 422, 424 (Ga. 2016). "Where the contractual language is explicit and unambiguous, 'the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" Id. (quoting Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008)). Where the terms of the policy are ambiguous, the policy will be construed strictly against the drafter, who is often the insurer. Id. (citing O.C.G.A. § 13-2-2(5)).

Here the policy is unambiguous. The applicable text of the policy describing the loss settlement conditions for a dwelling, either under common construction or similar construction, informs the insured that "until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property" and "to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss." Dkt. No. 38-3 at 34, 35. (emphasis in original). These provisions unambiguously inform the insured that to recover the replacement cost of the property beyond the actual cost value, he must complete the repairs within two years of the loss. Id. Though the amount of damages is a question of fact, how damages are to be measured is a question of law.

10

Quigley v. Jones, 332 S.E.2d 7, 8 (Ga. Ct. App. 1985), aff'd, 334 S.E.2d 664 (Ga. 1985). Therefore, because there is no record evidence that the damaged property was repaired by August 30, 2025, Plaintiff's recovery, if any, under his breach of contract claim will be limited to the actual cash value of the damaged property, computed as "the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." Dkt. No. 38-3 at 17.

Plaintiff also requested other damages due to Defendant's alleged delay in payment. See Dkt. No. 20 ¶ 28 ("As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained, and continues to suffer, significant damages."); id. ¶ 43 (praying for relief in the form of, in part, "[c]ompensatory damages including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs"). "While consequential damages may be recovered upon one party's failure to satisfactorily perform his contractual obligations, they are not allowed unless capable of exact computation." Consol. Eng'g Co. of Ga., Inc. v. U. I. R. Contractors, Inc., 222 S.E.2d 692 (Ga. Ct. App. 1975); Ajigbolamu v. Milne, 902 S.E.2d 687, 691 (Ga. Ct. App. 2024) (granting summary judgment on the issue of consequential damages because there was no evidence tracing the damages to the parties' conduct and consequential damages "did not appear capable of exact computation").

11

Here, while Defendant does not explicitly move to exclude consequential damages from Plaintiff's breach of contract claim, limiting damages to the actual cash value of the damaged property implicitly excludes consequential damages. Because there is no record evidence tracing these alleged additional damages to Defendant or allowing for exact computation of such damages, consequential damages are properly excluded.

**II. Because the record demonstrates that there is a genuine dispute as to the scope of damage to the property, Plaintiff's claim for bad faith under O.G.C.A § 33-4-6 fails as a matter of law.**

Defendant next argues that Plaintiff's claim of bad faith under O.C.G.A § 33-4-6 fails as a matter of law for two reasons: (1) Plaintiff failed to comply with the statutory filing requirements of Section 33-5-6, and (2) the scope of damage to Plaintiff's home is disputed, which means there is no dispute of material fact as to whether Defendant acted in bad faith in refusing the claim. Dkt. No. 38-1 at 8-13.

**a. Notice Requirements of Section 33-4-6**

First, Plaintiff does not appear to have complied with applicable statutory filing requirements, but such failure may be cured at a later date. Section 33-4-6 authorizes a penalty against insurers who refuse to pay a covered loss under an insurance policy in bad faith more than sixty days after the policy holder makes a demand for payment. See O.C.G.A § 33-4-6(a). The second part of

12

the statute contains a filing requirement with the Commissioner of Insurance:

> In any action brought pursuant to subsection (a) of this Code section, and within 20 days of bringing such action, the plaintiff shall, in addition to service of process in accordance with Code Section 9-11-4, mail to the Commissioner of Insurance a copy of the demand and complaint by first-class mail. Failure to comply with this subsection may be cured by delivering same.

O.C.G.A. § 33-4-6(b). Since the statute imposes a penalty, its requirements are strictly construed. See BayRock Mortg. Corp. v. Chi. Title Ins. Co., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) (citing Howell v. S. Heritage Ins. Co., 448 S.E.2d 275 (Ga. Ct. App. 1994)) (strictly construing the demand letter requirements of § 33-4-6).

However, Plaintiff may be able to cure this procedural defect by delivering the notice at a later date. In Mills v. Allstate Insurance Co., the district court found that plaintiffs' claim of bad faith under § 33-4-6 failed, in part, due to a lack of evidence showing they had made the required mailings to the Commissioner. No. 1:24-CV-00841-ELR, 2024 WL 5131609, at *6 (N.D. Ga. Nov. 22, 2024). However, the court left open the possibility that such a procedural fault might be cured. Id. ("But even if Plaintiffs cured this procedural fault by delivering proper notice to the Commissioner of Insurance, their claim still fails for two additional reasons."). In TPN Properties, LLC v. Home-Owners Insurance Co., the district court found that the plaintiff cured

the filing deficiency by mailing the documents to the Commissioner at a later date. 631 F. Supp. 3d 1301, 1317 (N.D. Ga. 2022). Because Plaintiff may still cure this filing deficiency by delivering a copy of the demand letter and complaint to the Commissioner of Insurance, Plaintiff's § 33-4-6 claim does not fail for lack of compliance with statutory requirements.

### b. Scope of Damages

Because there is a genuine dispute as to the scope of damages to Plaintiff's property, Plaintiff's Section 33-4-6 claim fails as a matter of law. When a genuine conflict reaches the merits of a claim, an insurer is not liable under Section 33-4-6 for contesting the claim as a matter of law. Rice v. State Farm Fire & Cas. Co., 430 S.E.2d 75, 78 (Ga. Ct. App. 1993) (finding that a directed verdict for the defendant insurance company on a § 33-4-6 claim was warranted when the court found the insurer had "reasonable grounds" to contest the plaintiff's claim). In evaluating whether there is a genuine conflict, "a court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of factual conflict to delay or avoid legitimate claims payment." Id.

After carefully scrutinizing the record in this case, the Court holds that Defendant had reasonable grounds to contest the amount of Plaintiff's claim for damages. First, the amounts found by the public adjusters hired by Plaintiff and Defendant were

14

vastly different. Dkt. No. 38-5 at 12; Dkt. No. 38-10 at 4; Dkt. No. 38-8 at 3. Plaintiff's inspection found the replacement cost value of the damage due to the wind event to be $72,396.01, dkt. no. 38-5 at 12, while Defendant's initial inspection returned no direct physical loss, dkt. no. 38-10 at 4, and a later inspection by a different company returned a replacement cost value of $1,045 for the damage, dkt. no. 38-8 at 3. Next, Defendant's claim notes reveal a concern with certain factual issues present in Plaintiff's initial assessment. Dkt. No. 30-10. For example, Plaintiff's estimate included an estimate for "seal & paint double garage door opening & trim," dkt. no. 8-5 at 2, when the home had no garage, dkt. no. 38-10 at 2. Additionally, Plaintiff's original estimate called for sealing, priming and painting the exterior with two finish coats, dkt. no. 38-5 at 2, when the exterior of the home appeared to be vinyl siding, dkt. no. 38-10 at 2. In the end, the claim notes record there were "[t]oo many other issues with estimate provided to list in file." Id. These factual disputes and discrepancies in the estimates of damage, noted months before litigation commenced, provide a reasonable basis for Defendant to contest the claim. Because such a basis exists, Plaintiff cannot recover against Defendant under a claim of bad faith per Section 33-4-6.

**CONCLUSION**

For the reasons stated above, there is no dispute of material fact as to the measure of Plaintiff's claim for damages under Count I or as to Plaintiff's bad faith claim in Count II. Accordingly, Defendant's motion for partial summary judgment, dkt. no. 38, is **GRANTED**. Defendant's related motion for a hearing, dkt. no. 39, is **DENIED** as moot.

**SO ORDERED** this 21st day of November, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA